**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
Aisha Scott, Arielle Cosby and Salma Tarmil *on*
*behalf of themselves and others similarly situated*
*in  the proposed FLSA Collective Action,*

Case No.:

                                             *Plaintiffs*,

**Jury Trial Demanded**

               - against -

**<u>COMPLAINT</u>**

AAM Holding Corp. (d/b/a FlashDancers
Gentlemen's Club), 59 Murray Street Enterprises,
Inc. (d/b/a FlashDancers Gentlemen's Club),
Barry Lipsitz, and Barry Lipsitz, Jr.,

                                         *Defendants*.
-------------------------------------------------------------X

Plaintiffs Aisha Scott ("Scott"), Arielle Cosby ("Cosby") and Salma Tarmil ("Tarmil",

and collectively, the "Plaintiffs") on behalf of themselves and others similarly situated, by and

through their attorneys, Levin-Epstein & Associates, P.C., upon personal knowledge as to

themselves and upon information and belief as to others, brings this complaint against Defendants

AAM Holding Corp. (d/b/a FlashDancers Gentlemen's Club), 59 Murray Street Enterprises, Inc.

(d/b/a FlashDancers Gentlemen's Club) (collectively, the "Corporate Defendants"), Barry Lipsitz,

and Barry Lipsitz, Jr., (collectively, the "Individual Defendants", and with the Corporate

Defendants, the "Defendants") and state as follows:

## NATURE OF THE ACTION

1.      The law is clear. Federal District Courts in New York[1] – and across the country[2] –

have found that exotic dancers at adult night clubs are non-exempt employees within the meaning

of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, the New York State Labor Law

("NYLL") and supporting New York Department of Labor ("NYDOL") Regulations.

2.      Plaintiffs worked as exotic dancers in the adult night clubs owned and operated by

Defendants known as "FlashDancers", located at: (i) 59 Murray Street New York, NY 10007

("FlashDancers – Downtown") ; and (ii) 320 West 45th St. New York, NY 10036 ("FlashDancers

– Midtown", and together, "FlashDancers").

3.      During their employment, Plaintiffs were not paid *any* wages for the hours they

worked. Plaintiffs only received gratuities from customers, which they were forced to distribute

to non-tipped employees at FlashDancers, including managers, owners, the "house mom", and

DJs.

4.      Plaintiffs were also required to pay Defendants a "house fee", if they had arrived

---

[1] *See Hart v. Rick's Cabaret Int'l, Inc.,* 967 F. Supp. 2d 901, 920 (S.D.N.Y. 2013) ("In this respect, the Court agrees with the Fifth Circuit that exotic dancers are "far more closely akin to wage earners toiling for a living, than to independent entrepreneurs seeking a return on their risky capital investments."); *see also Vasquez, et al.*, v. *NS Luxury Limousine Serv., Ltd., et al.*, 2021 WL 1226567, at *6 (S.D.N.Y. 2021) ("exotic dancers are ordinarily classified as employees instead of independent contractors for the purposes of FLSA despite the tips they receive") (citation omitted); *Hart v. RCI Hosp. Holdings, Inc.,* 2015 WL 5577713, at *15 (S.D.N.Y. 2015) (noting that most courts in FLSA cases have held that "exotic dancers are employees…"); *Matter of Enjoy The Show Management Inc*., 287 A.D.2d 822, 823, (3d Dept. 2001) (evidence of sufficient direction and control over dancers supported that they were employees rather than independent contractors).

[2] *See Bosco v. Tampa Food & Beverage, LLC,* 2013 WL 49477, *1 (M.D.Fla. 2013) (noting that "[m]any federal courts have construed arrangements between nightclubs and dancers and usually found that the dancers were employees as opposed to independent contractors"); *Butler v. PP & G, Inc*., 2013 WL 4026983, *5 (D.Md. 2013) (collecting case holding that exotic dancers are employees for FLSA purposes); *Thornton v. Crazy Horse, Inc*., 2012 WL 2175753 (D.Alaska 2012) (considering dancers at an adult establishment employees); *Thompson v. Linda and A. Inc*., 779 F.Supp.2d 139, 151 (D.D.C. 2011) (finding that exotic dancers were employees on summary judgment); *Clincy v. Galardi South Enters., Inc*., 808 F.Supp.2d 1326, 1345 (N.D.Ga. 2011) (finding that exotic dancers were employees on summary judgment); *Morse v. Mer Corp*., 2010 WL 2346334, *6 (S.D.Ind. 2010) (finding exotic dancers were employees on summary judgment); *Reich v. Circle C. Invest., Inc*., 998 F.2d 324, 328–29 (5th Cir. 1993) (holding that topless dancers are employees under the FLSA).

late to a scheduled shift, and a "no-show fee" for any shift that Plaintiffs were unable to work due to health or personal matters, which violated the NYLL's prohibitions on employers making unlawful deductions from their employees' wages by separate transaction.

5.     In further violation of the FLSA and NYLL, Plaintiffs were required to pay for the cost of their required uniforms. This is truly exploitative – and shameful.

6.     Plaintiffs bring this lawsuit seeking recovery, for themselves and on behalf of all other similarly situated individuals, against Defendants' violations of the FLSA, and violations of Articles 6 and 19 of the NYLL and their supporting NYDOL regulations.

7.     Plaintiffs seeks injunctive and declaratory relief and to recover unpaid minimum wages, overtime wages, spread-of-hours, unlawfully deducted wages, liquidated and statutory damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the FLSA, NYLL, and the NYLL's Wage Theft Prevention Act ("WTPA").

## JURISDICTION AND VENUE

8.     The Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216 (b), 28 U.S.C. § 1331 and 28 U.S.C. § 1337, and has supplemental jurisdiction over Plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367(a).

9.     This Court has federal question jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 because their claims arise under the FLSA.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c), because all events relevant to this action occurred in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

**AISHA SCOTT**

11.     Plaintiff Scott was employed as an exotic dancer at FlashDancers from on or around September 2019 through and including July 2022.

12.     Plaintiff Scott was employed as a non-managerial employee at FlashDancers from on or around September 2019 through and including July 2022.

13.     At all relevant times, Plaintiff Scott has been an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

**PLAINTIFF ARIELLE COSBY**

14.     Plaintiff Cosby was employed as an exotic dancer at FlashDancers from on or around June 2021 through and including the present date.

15.     Plaintiff Cosby was employed as a non-managerial employee at FlashDancers from on or around June 2021 through and including the present date.

16.     At all relevant times, Plaintiff Cosby has been an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

**PLAINTIFF SALMA TARMIL**

17.     Plaintiff Tarmil was employed as an exotic dancer at FlashDancers from on or around October 2021 through and including January 17, 2023.

18.     Plaintiff Tarmil was employed as a non-managerial employee at FlashDancers from on or around October 2021 through and including January 17, 2023.

19.     At all relevant times, Plaintiff Tarmil has been an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

**DEFENDANT AAM HOLDING CORP. (D/B/A FLASHDANCERS GENTLEMEN'S CLUB)**

20.     Upon information and belief, Defendant AAM Holding Corp. (d/b/a FlashDancers Gentlemen's Club) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 320 West 45th Street, New York, New York 10036.

21.     At all times relevant to this Complaint, Defendant AAM Holding Corp. (d/b/a FlashDancers Gentlemen's Club): (i) has had and continues to have employees engaged in commerce or in the production of goods and services for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and (ii) has had and continues to have an annual gross volume of sales of not less than $500,000.00.

22.     At all times relevant to this Complaint, Defendant AAM Holding Corp. (d/b/a FlashDancers Gentlemen's Club) was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed employees, including Plaintiffs.

23.     At all times relevant to this Complaint, Defendant AAM Holding Corp. (d/b/a FlashDancers Gentlemen's Club) was and is an employer within the meaning of the 29 U.S.C. 201 *et seq.* and NYLL Section 190(3), and employed employees, including Plaintiffs.

**DEFENDANT 59 Murray STREET ENTERPRISES, INC. (D/B/A FLASHDANCERS GENTLEMEN'S CLUB)**

24.     Upon information and belief, Defendant 59 Murray Street Enterprises, Inc. (d/b/a FlashDancers Gentlemen's Club) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business

at 320 West 45th Street, New York, New York 10036.

25.    At all times relevant to this Complaint, Defendant 59 Murray Street Enterprises, Inc. (d/b/a FlashDancers Gentlemen's Club): (i) has had and continues to have employees engaged in commerce or in the production of goods and services for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and (ii) has had and continues to have an annual gross volume of sales of not less than $500,000.00.

26.    At all times relevant to this Complaint, Defendant 59 Murray Street Enterprises, Inc. (d/b/a FlashDancers Gentlemen's Club) was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed employees, including Plaintiffs.

27.    At all times relevant to this Complaint, Defendant 59 Murray Street Enterprises, Inc. (d/b/a FlashDancers Gentlemen's Club) was and is an employer within the meaning of the 29 U.S.C. 201 *et seq.* and NYLL Section 190(3), and employed employees, including Plaintiffs.

**DEFENDANT BARRY LIPSITZ**

28.    Defendant Barry Lipsitz is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period.

29.    Defendant Barry Lipsitz is sued individually and in his capacity as an owner, officer and/or agent of the Corporate Defendants.

30.    Defendant Barry Lipsitz possesses or possessed operational control over the Corporate Defendants, or controlled significant functions of the Corporate Defendants.

31.    Defendant Barry Lipsitz determined the wages and compensation of employees, including Plaintiffs, established the schedules of employees, maintained employee records, and

had the authority to hire and fire employees.

32.     At all times relevant to this Complaint, Defendant Barry Lipsitz was and is an employer within the meaning of the 29 U.S.C. 201 *et seq*. and NYLL Section 190(3), and employed employees, including Plaintiffs.

**DEFENDANT BARRY LIPSITZ, JR.**

33.     Defendant Barry Lipsitz, Jr. is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period.

34.     Defendant Barry Lipsitz, Jr. is sued individually and in his capacity as an owner, officer and/or agent of the Corporate Defendants.

35.     Defendant Barry Lipsitz, Jr. possesses or possessed operational control over the Corporate Defendants, or controlled significant functions of the Corporate Defendants.

36.     Defendant Barry Lipsitz, Jr. determined the wages and compensation of employees, including Plaintiffs, established the schedules of employees, maintained employee records, and had the authority to hire and fire employees.

37.     At all times relevant to this Complaint, Defendant Barry Lipsitz, Jr. was and is an employer within the meaning of the 29 U.S.C. 201 *et seq*. and NYLL Section 190(3), and employed employees, including Plaintiffs.

**DEFENDANTS CONSTITUTE JOINT EMPLOYERS**

38.     Defendants own, operate and/or control a group of adult night clubs primarily doing business as "FlashDancers", located at: (i) 59 Murray Street New York, NY 10007 (*i.e.,* "FlashDancers – Downtown") ; and (ii) 320 West 45th  St. New York, NY 10036 (*i.e.,* "FlashDancers – Midtown").

39.     The Individual Defendants possess operational control over the Corporate

Defendants, possess an ownership interest in the Corporate Defendants, and control significant functions of the Corporate Defendants.

40.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

41.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

42.     Defendants jointly employed Plaintiffs, and all similarly situated individuals, and are Plaintiffs' (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

43.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

44.     Upon information and belief, the Individual Defendants operate the Corporate Defendants as either an alter ego of themselves, and/or fails to operate the Corporate Defendants as entities legally separate and apart from themselves, by, among other things:

a.     failing to adhere to the corporate formalities necessary to operate the Corporate Defendants as separate and legally distinct entities;

b.     defectively forming or maintaining the Corporate Defendants, by among other things failing to hold annual meetings or maintaining appropriate corporate records;

c.     transferring assets and debts freely as between all Defendants;

d.   operating the Corporate Defendants for their own benefit as the majority shareholders;

e.   operating the Corporate Defendants for their own benefit and maintaining control over it as closed corporations or closely controlled entities;

f.   intermingling assets and debts of their own with the Corporate Defendants;

g.   diminishing and/or transferring assets of the Corporate Defendants to protect their own interests; and

h.   other actions evincing a failure to adhere to the corporate form.

45.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and NYLL.

46.    Defendants had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services.

**FACTUAL ALLEGATIONS**

*Factual Allegations Pertaining Specifically to Plaintiff Scott*

47.    Plaintiff Scott was an employee of Defendants.

48.    Plaintiff Scott worked as an exotic dancer at Defendants' adult night clubs from approximately September 2019 through and including July 2022.

49.    During this period, Plaintiff Scott primarily worked as an exotic dancer at FlashDancers – Downtown.

50.    However, on rare instances, Plaintiff Scott was required to work at FlashDancers – Midtown.

51.    From approximately September 2019 through and including July 2022, Plaintiff

Scott worked six (6) to seven (7) days a week: from approximately 5:00 p.m. to 1:00 a.m. or 2:00 a.m., for a total of approximately 8 or 9 hours each day, and for a total period of approximately 48 to 63 hours during each of the weeks, respectively.

52.     Plaintiffs Scott was required to work in excess of forty (40) hours per week, but never received an overtime premium of one and one-half times their regular rate of pay for those hours.

*Factual Allegations Pertaining Specifically to Plaintiff Cosby*

53.     Plaintiff Cosby was an employee of Defendants.

54.     Plaintiff Cosby worked as an exotic dancer at Defendants' adult night clubs from approximately June 2021 through and including the present date.

55.     During this period, Plaintiff Cosby primarily worked as an exotic dancer at FlashDancers – Downtown.

56.     However, on rare instances, Plaintiff Cosby was required to work at FlashDancers – Midtown.

57.     From approximately June 2021 through and including the present date, Plaintiff Cosby worked three (3) to five (5) days a week: from approximately 8:00 p.m. to 4:00 a.m., for a total of approximately 8 hours each day, and for a total period of approximately 26 to 40 hours during each of the weeks, respectively.

*Factual Allegations Pertaining Specifically to Plaintiff Tarmil*

58.     Plaintiff Tarmil was an employee of Defendants.

59.     Plaintiff Tarmil worked as an exotic dancer at Defendants' adult night clubs from approximately October 2021 through and including January 17, 2023.

60.     From approximately October 2021 through and including January 17, 2023,

Plaintiff Tarmil worked four (4) days a week: from approximately 8:00 p.m. to 4:00 p.m., for a total of approximately 10 hours each day, and for a total period of approximately 40 hours during each of the weeks, respectively.

*Factual Allegations Pertaining to all Plaintiffs*

61.    In their roles as exotic dancers, as their titles suggest, Plaintiffs' primary duties consisted of dancing at Defendants' adult night clubs, either on stage, in private rooms, for the clubs' customers.

62.    During their employment, Plaintiffs were not paid *any* wages for the hours they worked in a week.

63.    Instead, Plaintiffs' compensation exclusively consisted of gratuities they received from customers, while performing dances on stage, or in private rooms.

64.    At all relevant times hereto, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs', all other similarly situated individuals', tipped wages.

65.    Specifically, Defendants required Plaintiffs, and all similarly situated individuals, to distribute a percentage of all gratuities received from clients who booked a private room.

66.    Defendants unlawfully withheld approximately $500 of Plaintiff's, and all similarly situated individuals', total tips, when customers would book a "champaign room."

67.    Defendants unlawfully withheld approximately $1,000 of Plaintiff's, and all similarly situated individuals', total tips, when customers would book a "blue room."

68.    Defendants unlawfully withheld approximately $1,500 of Plaintiff's, and all similarly situated individuals', total tips, when customers would book a "safari room."

69.     In addition to requiring Plaintiffs, and all similarly situated individuals, to distribute a percentage of all gratuities received from clients who booked a private room,

Defendants also retained 20% of all gratuities paid by customers using "Flash Dancer Money" (*i.e.,* funny money).

70.     "Flash Dancer Money" is a fake currency, created by Defendants, and issued to customers who only had a credit card but wished to give a dancers physical tips.

71.     Plaintiffs, and all similarly situated individuals, who were tipped in "Flash Dancer Money", were forced to re-convert it back into real currency at the end of their shifts.

72.     Defendants unlawfully withheld approximately 20% of all "Flash Dancer Money" that Plaintiffs re-converted at the end of their shifts.

73.     As the manager and owners of FlashDancers, Defendants should not have taken a share of Plaintiffs', and all similarly situated individuals' tips.

74.     Defendants also required Plaintiffs, and all similarly situated individuals,  to "tip-out" Defendants' non-tipped employees, each night, including DJs (who would receive $10 to $20 per exotic dancer, per night) and the "house mom" (who would receive $15 to $20 per exotic dancer, per night).

75.     The employer-mandated tip sharing scheme imposed on Plaintiffs, and all similarly situated individuals, is not customary.

76.     The employer-mandated tip sharing imposed on Plaintiffs was not reasonable.

77.     Defendants did not establish, maintain, and preserve records as required by law, or did not make any such records available to Plaintiffs or other participants in the mandated tip sharing scheme, that included: (1) a daily log of the tips collected by each employee on each shift, whether in cash or by credit card; (2) a list of occupations that the employer deemed eligible to receive tips through tip sharing; (3) the shares of tips that each occupation was scheduled to receive from tip sharing; and (4) the amount in tips that each employee received from the tip share

by date.

78.     Defendants did not post in a conspicuous place notices issued by the Department of Labor about wage and hour laws, tip appropriations, or illegal deduction provisions.

79.     In still further violation of the NYLL and FLSA, Plaintiffs were also required to pay Defendants a "house fee", if they had arrived late to a scheduled shift, and a "no-show fee" for any shift that Plaintiffs were unable to work due to health or personal matters.

80.     For example, if Plaintiffs Cosby or Tarmil were late to their expected 8:00 p.m. shift, Defendants would charge them a "house fee" of $80, with an additional $20 for every 20 minute they were late, up to $180.

81.     For example, if Plaintiffs were unable to work due to health or personal matters, Defendants would charge them a "no-show fee" of $150 to $200 (for shifts missed Thursday through Sunday) or $100 (for shifts missed Monday through Wednesday).

82.     In still further violation of the NYLL and FLSA, Plaintiffs were also required to pay for the cost of their required uniforms, including specialized dresses, lingerie, or panties.

83.     For example, if Plaintiff Scott showed up to work in a lace dress, the "house mom", or Barry Lipsitz, Jr., would tell her, "you can't wear that."

84.     Plaintiff Scott would then be forced to purchase a dress, at $80.

85.     Plaintiffs' work duties required neither discretion nor independent judgment.

86.     No notification, either in the form of posted notices, or other means, was ever given to Plaintiffs regarding wages are required under the FLSA or NYLL.

87.     Defendants did not provide Plaintiffs a statement of wages, as required by NYLL 195(3).

88.     Defendants did not give any notice to Plaintiffs of their rate of pay, employer's

regular pay day, and such other information as required by NYLL § 195(1).

89.     At all relevant times, Defendants did not pay Plaintiffs at the rate of one and one-half times their hourly wage rate for hours worked in excess of forty per workweek.

### FLSA COLLECTIVE ACTION ALLEGATIONS

90.     Plaintiffs brings the First, Second and Eighth Claims for Relief as a collective action pursuant to FLSA §16(b), 29 U.S.C. §216(b), on behalf of all non-exempt persons (including but not limited to exotic dancers) employed by Defendants on or after the date that is six years before filing of the Complaint in this case, as defined herein ("FLSA Collective Plaintiffs").

91.     At all relevant times, Plaintiffs and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan and common policies, programs, practices, procedures, protocols, routines and rules willfully failing and refusing to pay them at the legally required minimum wages, overtime wage for all hours worked in excess of forty hours per work week, and gratuities. These claims of the Plaintiffs are essentially the same as those of the FLSA Collective Plaintiffs.

92.     The First, Second and Eighth Claims for Relief are properly brought under and maintained as an opt-in collective action pursuant to under FLSA §16(b), 29 U.S.C. §216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purpose of notice and others related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

93.     Plaintiffs reserve the right to re-define the FLSA Collective Plaintiffs prior to

notice or collective certification, and thereafter, as necessary.

## FIRST CLAIM
### (FLSA – Unpaid Minimum Wages, 29 U.S.C. § 201 *et seq*.)

94.     Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

95.     Defendants willfully and intentionally failed to compensate the Plaintiff with the applicable minimum hourly wage in violation of the FLSA, 29 U.S. Code § 206.

96.     Defendants have failed to make a good faith effort to comply with the FLSA with respect to compensation of Plaintiffs.

97.     Due to Defendants' violations of the FLSA, Plaintiffs, on behalf of themselves and FLSA Collective Plaintiffs, are entitled to recover from Defendants, jointly and severally, their unpaid minimum wages and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, pursuant to the FLSA, all in an amount to be determined at trial. 29 U.S.C. § 216(b).

## SECOND CLAIM
### (FLSA – Unpaid Overtime Wages, 29 U.S.C. §§ 201 *et seq*.)

98.     Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

99.     At all relevant times to this action, Plaintiffs are covered, non-exempt employees within the meaning of the FLSA.

100.    Defendants were required to pay Plaintiffs one and one-half (1 1/2) times the regular rate at which Plaintiffs were employed for all hours worked in excess of forty hours in a workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207, et seq.

101.     Defendants failed to pay Plaintiff Scott the overtime wages to which they are entitled under the FLSA.

102.     Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs overtime wages.

103.     Due to Defendants' willful violations of the FLSA, Plaintiff Scott, on behalf of herself and FLSA Collective Plaintiffs, are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorney's fees and cost of the action and pre-judgment and post-judgment interest.

### THIRD CLAIM
### (NYLL – Unpaid Minimum Wages, N.Y. Stat. § 650 *et seq.*)

104.     Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

105.     Defendants willfully and intentionally failed to compensate the Plaintiffs with the applicable minimum hourly wage in violation of the NYLL §650 et seq.

106.     Defendants have failed to make a good faith effort to comply with the NYLL with respect to compensation of Plaintiffs.

107.     Due to Defendants' violations of the NYLL, Plaintiffs, on behalf of themselves and FLSA Collective Plaintiffs, are entitled to recover from Defendants, jointly and severally, their unpaid minimum wages and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, in an amount to be determined at trial, pursuant to the NYLL § 663.

### FOURTH CLAIM
### (NYLL – Unpaid Overtime Wages)

108.     Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth

herein.

109.    Plaintiffs are covered, non-exempt employees within the meaning of the NYLL and supporting New York Department of Labor ("NYDOL") Regulations.

110.    Under the NYLL and supporting NYDOL Regulations, Defendants are required to pay Plaintiffs one and one half times the regular rate of pay, which shall not be less than the minimum wage, for all hours they worked in excess of forty.

111.    Defendants failed to pay Plaintiff Scott the overtime wages to which they are entitled under the NYLL.

112.    Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs overtime wages.

113.    Due to Defendants' willful violations of the NYLL, Plaintiff Scott is entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorney's fees and cost of the action and pre-judgment and post-judgment interest.

## FIFTH CLAIM
### (NYLL WTPA– Failure to Provide Wage Notices)

114.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

115.    The NYLL and the WTPA require employers to provide all employees with a written notice of wage rates at the time of hire.

116.    In violation of NYLL §195 (1), Defendants failed to furnish to Plaintiffs at the time of hiring, or whenever their rate(s) of pay changed, with a wage notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other, allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL §191; the

name of the employer; any "doing business as" names used by the employer; the physical address

of the employer's main office or principal place of business, and a mailing address, if different;

the telephone number of the employer, and anything otherwise required by law.

117.    Due to Defendants' violations of NYLL §195 (1), Plaintiffs are entitled to recover

their liquidated damages, reasonable attorney's fees and cost and disbursement of the action,

pursuant to the NYLL §198 (1-b).

## SIXTH CLAIM
### (Violation of the Wage Statement Provisions of the NYLL)

118.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

119.    With each payment of wages, Defendants failed to provide Plaintiffs with a

statement listing each of the following the dates of work covered by the payment of wages; name

of employee; name of employer; address and phone number of employer; rate or rates of pay and

basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross

wages; deductions; allowances, if any, claimed as part of the minimum wage; the number of

regular hours worked; the number of overtime hours worked, as required by the NYLL § 195(3).

120.    As a result of Defendant's violation of the WTPA, Plaintiffs are entitled to

damages of at least $150 per week during which the violations occurred.

## SEVENTH CLAIM
### (NYLL – Unlawful Deductions from Tips)

121.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth

herein.

122.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of

the N.Y. Lab. Law §§ 2 and 651.

123.    New York State Labor Law § 196-d prohibits any employer or his agents,

including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

124.    Defendants unlawfully misappropriated a portion of Plaintiffs' tips that were received from customers.

125.    Defendants knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

126.    Plaintiffs were damaged in an amount to be determined at trial.

### EIGHTH CLAIM
### (Unlawful Wage Deductions Under the FLSA)

127.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

128.    Defendants have made unlawful deductions and required kickbacks from Plaintiffs' wages, including but not limited to, deductions from Plaintiffs' tips that were received from customers.

129.    The deductions made from Plaintiffs' wages have not been authorized or required by law.

130.    The deductions made from Plaintiffs' wages have not been expressly authorized in writing by Plaintiffs, and have not been for Plaintiffs' benefit.

131.    Through their knowing or intentional efforts to permit unauthorized deductions form Plaintiffs' wages, Defendants have willfully violated the FLSA. 29 U.S.C. § 206(a); 29 C.F.R. § 531.35.

132.    Due to Defendants' willful violations of the FLSA, Plaintiffs are entitled to recover from Defendants the amounts of any unlawful deductions, liquidated damages as provided for by

the FLSA, reasonable attorneys' fees, costs, and prejudgment and post-judgment interest.

## NINTH CLAIM
### (Recovery of Equipment Costs)

133.   Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

134.   Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining uniform, equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL. 29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

135.   These expenses incurred by Plaintiffs reduced their wages below the minimum thresholds under the FLSA and NYLL.

136.   Plaintiffs were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs, on behalf of themselves and FLSA Collective Plaintiffs, respectfully requests that this Court enter a judgment:

a.   authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as nonexempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied minimum wages, premium overtime wages and gratuities;

b.   certification of this case as a collective action pursuant to the FLSA;

c.   issuance of notice pursuant to 29 U.S.C. § 216(b), to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and

appointing Plaintiffs and their counsel to represent the FLSA Collective Plaintiffs;

d.      declaring that Defendants violated the minimum wage provisions of the FLSA, the NYLL and the NYDOL regulations;

e.      declaring that Defendants violated the overtime wage provisions of the FLSA, the NYLL and the NYDOL regulations;

f.      declaring that Defendants violated the unlawful deduction provisions of the NYLL and NYDOL Regulations;

g.      declaring that Defendants violated the unlawful deduction provisions of the FLSA;

h.      declaring that Defendants violated the notice statement pay provisions of the NYLL and WTPA;

i.      awarding Plaintiffs unpaid minimum wages;

j.      awarding Plaintiffs unpaid overtime wages;

k.      awarding Plaintiffs unpaid gratuities;

l.      awarding Plaintiffs liquidated damages in an amount equal to the total amount of wages found to be due;

m.      awarding Plaintiffs statutory damages as a result of Defendants' failure to furnish accurate wage notice pursuant to the NYLL;

n.      Awarding Plaintiff Martell compensatory, statutory, punitive and all other damages available;

o.      awarding Plaintiffs pre- and post-judgment interest under the NYLL;

p.      awarding Plaintiffs reasonable attorneys' fees and the costs and disbursements of this action; and

q.      Such other relief as this Court deems just and proper.

Dated: New York, New York
       March 5, 2023

                              Respectfully submitted,

                              By:  /s/ Joshua Levin-Epstein
                                   Joshua Levin-Epstein
                                   Jason Mizrahi
                                   Levin-Epstein & Associates, P.C.
                                   60 East 42nd Street, Suite 4700
                                   New York, New York 10165
                                   Tel: (212) 792-0046

Email: Joshua@levinepstein.com
*Attorneys for the Plaintiffs and proposed FLSA*
*Collection Action Plaintiffs*