UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AISHA SCOTT, ARIELLE COSBY, and SALMA TARMIL, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>      v.<br><br>AAM HOLDING CORP., d/b/a FLASHDANCERS GENTLEMENT'S CLUB, 59 MURRAY ST. ENTERPRISES INC., d/b/a FLASHDANCERS GENTLEMEN'S CLUB, BARRY LIPSITZ, BARRY LIPSITZ JR., SHAUN DOE, JIMMY DOE, and ALAINA DOE.<br><br>        Defendants. | Case No. l:23-cv-01909(ALC)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY THE ACTION** |

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND .............................................................................................................................. 2

ARGUMENT ................................................................................................................................... 3

    POINT I  FEDERAL LAW COMPELS ARBITRATION OF PLAINTIFFS' CLAIMS ........ 3

        A.     Applicable Legal Standard.......................................................................................... 3

        B.     Plaintiffs Entered Into Valid and Enforceable Agreements to Arbitrate ................ 4

        C.     The Arbitration Agreements Encompass the Claims in the Amended Complaint . 5

    POINT II  ALL DISPUTES CONCERNING THE ENFORCEABILITY OF ANY OF TERMS OF THE ARBITRATION AGREEMENTS ARE FOR THE ARBITRATOR ............... 7

    POINT III  DISCOVERY SHOULD BE STAYED PENDING DECISION ON DEFENDANTS' MOTION TO COMPEL ARBITRATION ....................................................... 8

CONCLUSION................................................................................................................................9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alvarez v. Experian Info. Sols., Inc.*,
   No. 219CV03343JSJMW, 2021 WL 2349370 (E.D.N.Y. June 7, 2021) ..................................9

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) .......................................................................................................................3

*Brecher v Midland Credit Mgt., Inc.*,
   18CV3142ERKJO, 2019 WL 1171476 (E.D.N.Y. Mar. 13, 2019) ...........................................2

*Dean Witter Reynolds, Inc. v. Bvrd*,
   470 U.S. 213 (1985) ........................................................................................................................4

*Gingras v Think Fin., Inc.*,
   922 F3d 112 (2d Cir 2019) ............................................................................................................7

*Gold v. Deutsche Aktiengesellschaft*,
   365 F.3d 144 (2d Cir. 2004) ..........................................................................................................4

*Hellenic Lines. Ltd. v. Louis Dreyfus Corp.*,
   372 F.2d 753 (2d Cir. 1967) ..........................................................................................................5

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) ....................................................................................................................7

*McMahon Sec. Co. L.P. v. Forum Capital Markets, L.P.*,
   35 F.3d 82 (2d Cir. 1994) .............................................................................................................5

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Belco Petroleum Corp.*,
   88 F.3d 129 (2d Cir. 1996) ...........................................................................................................4

*Nunez v. Citibank, N.A.*,
   2009 WL 256107 (S.D.N.Y.,2009) ...............................................................................................4

*Paine Webber Inc. v. Bybyk*,
   81 F.3d 1193 (2d Cir. 1996) .........................................................................................................8

*Rent-A-Center, W., Inc. v. Jackson*,
   561 U.S. 63 (2010) .........................................................................................................................7

*Ryan v. JPMorgan Chase & Co.*,
   924 F. Supp.2d 559 (S.D.N.Y. 2013) ..........................................................................................6

*Shaw Group Inc. v Triplefine Intern. Corp.*,
  322 F3d 115 (2d Cir 2003)..........................................................................................................7

*Stern v. Espeed, Inc.*,
  2006 WL 2741635 (S.D.N.Y. Sept. 22, 2006)............................................................................5

*Syngenta Crop Prot., LLC v. Ins. Co. of N. Am., Inc.*,
  No. 18-CV-715 (DLC), 2018 WL 1587601 (S.D.N.Y. Mar. 29, 2018) ......................................7

*Teah v. Macy's Inc.*,
  No. 11-CV-1356 CBA MDG, 2011 WL 6838151 (E.D.N.Y. Dec. 29, 2011) ............................5

*Transunion Corp. v. PepsiCo, Inc.*,
  811 F.2d 127 (2d Cir. 1987).........................................................................................................8

**Statutes**

Fair Labor Standards Act ............................................................................................. passim

Federal Arbitration Act ................................................................................................ passim

New York Labor Law ............................................................................................................6

**Rules**

Fed. R. Civ. P. 12.....................................................................................................................2

## PRELIMINARY STATEMENT

AAM Holding Corp. ("AAM") dba FlashDancers Gentlemen's Club; 59 Murray St. Enterprises Inc. ("59 Murray") dba FlashDancers Gentlemen's Club; Barry Lipsitz; Barry Lipsitz Jr.; Shaun Doe; Jimmy Doe; and Alaina Doe (collectively, the "Defendants") submit this Memorandum of Law in support of their Motion to Compel Arbitration and Stay the Action pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA") and the Local Rules of this Court.

Plaintiffs Aisha Scott and Salma Tarmil are former entertainers at FlashDancers Downtown (operated by 59 Murray) and Plaintiff Arielle Cosby (Scott, Tarmil, and Cosby collectively known as, the "Plaintiffs") is a former entertainer at both FlashDancers Midtown (operated by AAM) and FlashDancers Downtown (operated by 59 Murray) ("FlashDancers Midtown" and "FlashDancers Downtown" herein collectively referred to as the "Clubs"). They filed the amended complaint (the "Amended Complaint") in the Southern District of New York against Defendants alleging violations of the Fair Labor Standards Act ("FLSA"), the New York State Labor Law ("NYLL"), and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Plaintiffs Scott and Cosby also appear to allege claims of race discrimination but fail to specify the statute(s) they are proceeding under.

However, each Plaintiff, prior to the commencement of their employment with the Clubs, signed and executed Commissioned Salesperson Agreements ("CSA") which include arbitration provisions (the "Arbitration Provisions") pursuant to which they agreed to arbitrate all of the claims asserted in the Amended Complaint and to file any claim, whether in court or arbitration,

on an individual basis only. Consistent with the terms of the Arbitration Provisions, this Court should compel each Plaintiff to arbitrate her disputes and stay the case in its entirety.[1]

## BACKGROUND

On March 3, 2023, Plaintiffs filed a Complaint against Defendants in the U.S. District Court, Southern District Court of New York, alleging wage-and-hour claims on behalf of themselves and others alleged to be similarly situated under the FLSA and NYLL alleging that Defendants (1) failed to pay them the minimum wage; (2) failed to pay them overtime wages; (3) did not provide them with the required wage notices and statements; (4) unlawfully withheld tips owed to them; and (5) required them to purchase uniforms for their work. *See generally* Complaint (ECF Dkt No. 1). On April 12, 2024, Plaintiffs filed an Amended Complaint adding allegations of employment discrimination and RICO violations against Defendants. *See generally* Amended Complaint (ECF Dkt No. 49).

However, each Plaintiff signed a CSA which include Arbitration Provisions, affirming their commitment to arbitrate any and all disputes arising out of their employment at the Clubs. Copies of the CSAs signed by each Plaintiff are annexed to the Miceli Decl, as Exhibit "A"[2]. Indeed, the Arbitration Provisions provide that:

> [a]ny and all controversies, disputes, or claims – past, present or future – arising out of [Plaintiff]'s employment at the Club, will be exclusively decided by binding arbitration held pursuant to the Federal Arbitration Act ("FAA")

*Id*. § 6.[3]  The Arbitration Provisions continue in relevant part:

---

[1] Defendants file their Motion to Compel Arbitration in lieu of answering or moving to dismiss the Amended Complaint. Defendants respectfully reserve their rights to file a subsequent Fed. R. Civ. P. 12(b) motion to dismiss Plaintiffs' Amended Complaint, in whole or in part, if their Motion to Compel Arbitration is denied.
[2] On a motion to compel arbitration, the Court may consider relevant documents outside of the pleadings. *See Brecher v Midland Credit Mgt., Inc*., 18CV3142ERKJO, 2019 WL 1171476, at *1 (E.D.N.Y. Mar. 13, 2019).
[3] For ease of reference, Defendants cite to the CSA signed by Aisha Scott with 59 Murray in 2021 throughout this brief.

> <u>THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CONTROVERSIES, DISPUTES, OR CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY.</u>

*Id.* (emphasis in the original). The CSAs also include class and collective action waivers which provide that:

> all claims or disputes between the parties (and any other persons or entities associated or affiliated with the Club) will be litigated individually; [Plaintiff] understands and agrees that [Plaintiff] will not consolidate [Plaintiff]'s claims with the claims of any other individual; will not seek class or collective action treatment for any claim that [Plaintiff] may have; and will not participate in any class or collective action against the Club or against any persons or entities associated or affiliated with the Club.

*Id.* § 7. Critically, the Arbitration Provisions delegate to the arbitrator, the authority to resolve any and all disputes regarding validity of its terms, including, but not limited to, the provisions noted above, stating that:

> **ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY AND ALL DISPUTES OVER THE VALIDITY OF ANY PART OF THIS AGREEMENT.**

*Id.* § 6 (emphasis in the original).

In direct contravention of the Arbitration Provisions, Plaintiffs collectively filed this lawsuit.

**ARGUMENT**

**POINT I**

**FEDERAL LAW COMPELS ARBITRATION OF
PLAINTIFFS' CLAIMS**

A.   **Applicable Legal Standard**

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." "The principal purpose of the FAA is to ensure that private arbitration

agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (internal quotations and alteration omitted). Thus, the FAA requires courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Bvrd*, 470 U.S. 213, 221 (1985). Therefore, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds*, 470 U.S. at 218 (citing 9 U.S.C. §§ 3, 4).

A court deciding whether a dispute should be arbitrated, must answer only two questions: (1) whether there is a valid agreement to arbitrate and, if so, (2) whether the subject of the dispute is within the scope of the arbitration agreement. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996). "Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." *Nunez v. Citibank, N.A.*, 2009 WL 256107, at *2 (S.D.N.Y.,2009). A court thus "will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *State of New York v. Oneida Indian Nation of New York*, 90 F.3d 58, 61 (2d Cir. 1996). As set forth below, there are valid agreements to arbitrate, and the scope of the claims here clearly fall within the agreements.

B.  **Plaintiffs Entered Into Valid and Enforceable Agreements to Arbitrate**

Plaintiffs entered into CSAs that are valid and enforceable under well-settled contract law principles.

As an initial matter, the signatures of the parties on the agreements serve as presumptive evidence that an agreement to arbitrate was formed. *See Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) ("[I]n the absence of fraud or other wrongful act on the part of

another contracting party, a party who signs or accepts a written contract is conclusively presumed to know its contents and to assent to them.")(citation, internal quotation and alteration marks omitted)).

Additionally, the CSAs are supported by consideration and there is no dispute that the consideration exchanged was sufficient. Courts have held that an offer of continuing employment alone is sufficient consideration to support an agreement for arbitration. *See, e.g.*, *Stern v. Espeed, Inc.*, 2006 WL 2741635, at *2 (S.D.N.Y. Sept. 22, 2006) ("In the specific context of post-employment arbitration agreements, several courts in this District have held that continuation of employment alone is sufficient consideration to enforce such an agreement"). Here, Plaintiffs' continued employment with the Clubs serve as consideration for executing the CSAs. Moreover, since the agreements bind both parties to arbitrate their claims arising out of the employer-employee relationship, there is no question that there is adequate consideration. *See Hellenic Lines. Ltd. v. Louis Dreyfus Corp*., 372 F.2d 753, 758 (2d Cir. 1967) (holding that a party's "promise to arbitrate was sufficient consideration to support [the other party's] promise to arbitrate."); *Teah v. Macy's Inc*., No. 11-CV-1356 CBA MDG, 2011 WL 6838151, at *5 (E.D.N.Y. Dec. 29, 2011) ("There is clearly adequate consideration for the arbitration agreement, as it binds both parties to arbitrate their claims ...").

Accordingly, Plaintiffs unquestionably entered into valid and enforceable written agreements to arbitrate their claims.

    **C.**    **The Arbitration Agreements Encompass the Claims in the Amended Complaint**

There is also no question that claims in the Amended Complaint fall squarely within the broad scope of the Arbitration Provisions.

In determining whether signatories have agreed to arbitrate their dispute, arbitration clauses are to be construed "as broadly as possible." *McMahon Sec. Co. L.P. v. Forum Capital Markets, L.P.*, 35 F.3d 82, 88 (2d Cir. 1994).

Here, there is no doubt that the parties agreed to arbitrate the claims alleged in the Amended Complaint, each of which undoubtedly arose out of Plaintiffs' employment with the Clubs. Indeed, the Arbitration Provisions broadly provide that:

> By their signatures below, [the "Parties"] **agree that any and all controversies, disputes, or claims – past, present or future – arising out of [Plaintiff]'s employment at the Club**, will be exclusively decided by binding arbitration held pursuant to the Federal Arbitration Act ("FAA")…

*See* Exhibit A § 6 (emphasis added).

The allegations that Plaintiffs were not paid in accordance with the NYLL and FLSA are all clearly "in connection" with Plaintiffs' employment with the Clubs. Courts routinely send these types of employment cases to arbitration. *See, e.g., Ryan v. JPMorgan Chase & Co.,* 924 F. Supp.2d 559 (S.D.N.Y. 2013) (granting motion to dismiss collective-action claims and compelling arbitration of Plaintiff's wage-hour claims on an individual basis); *Hegazy v. Halal Guys, Inc.*, No. 22CV01880JHRKHP, 2023 WL 8924092 (S.D.N.Y. Dec. 27, 2023) (granting motion to compel arbitration of employees' NYLL and FLSA claims). Likewise, Plaintiffs Scott and Cosby's allegations that they were discriminated against based on their race are also subject to arbitration. *See e.g., Lewis v. ANSYS, Inc.*, No. 19-CV-10427 (AJN), 2021 WL 1199072, at *8 (S.D.N.Y. Mar. 30, 2021) ([c]laims for employment discrimination…under Title VII, NYSHRL, and NYCHRL are arbitrable). Plaintiffs' RICO claims are also arbitrable. *See e.g., Warren v. eBay, Inc.*, No. 22CIV3524PGGGWG, 2023 WL 6559855, at *5 (S.D.N.Y. Oct. 10, 2023), *report and recommendation adopted*, No. 22CIV3524PGGGWG, 2024 WL 662594 (S.D.N.Y. Jan. 8, 2024) ("Plaintiff has identified no evidence that the parties intended to exclude RICO claims from the

arbitration clause. Thus, we find that all claims in the complaint fall within the scope of the arbitration agreement.").

Therefore, because (1) there is a valid agreement to arbitrate, and (2) the subject of the dispute is within the scope of the Arbitration Provisions, Plaintiffs' claims should be compelled to arbitration and the action should be stayed pending arbitration.

## POINT II

### ALL DISPUTES CONCERNING THE ENFORCEABILITY OF ANY OF TERMS OF THE ARBITRATION AGREEMENTS ARE FOR THE ARBITRATOR

"Under the Federal Arbitration Act, parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). Just as parties may contract to have an arbitrator decide the merits of their disputes, they may also contract to have an arbitrator decide 'gateway' questions of 'arbitrability.' *Gingras v Think Fin., Inc.*, 922 F3d 112, 126 (2d Cir 2019) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)).

"[W]hen an agreement 'clearly and unmistakably' delegates the issue of arbitrability to the arbitrator, [the court] will enforce it." *Id.* "Under th[is] standard[ ], arbitration clauses that use language mandating arbitration of, for example, 'all disputes ... concerning or arising out' of an agreement constitute clear and unmistakable delegations of the power to decide questions of arbitrability to the arbitrator." *Syngenta Crop Prot., LLC v. Ins. Co. of N. Am., Inc.*, No. 18-CV-715 (DLC), 2018 WL 1587601, at *4 (S.D.N.Y. Mar. 29, 2018); *see also* S*haw Group Inc. v Triplefine Intern. Corp.*, 322 F3d 115, 121 (2d Cir 2003) (holding that an agreement to "arbitrate 'all disputes,' ... qualified only by the requirement that the matter be one 'concerning or arising under' the ... [a]greement" was evidence of intent to delegate the issue of arbitrability to the arbitrator).

Here, the Arbitration Provisions "clearly and unmistakably" delegate to the arbitrator the sole authority to resolve, among other things, disputes regarding the validity of the agreements:

> **ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY AND ALL DISPUTES OVER THE VALIDITY OF ANY PART OF THIS AGREEMENT.**

*See* Exhibit A § 6.

Apart from explicitly delegating issues of validity to the arbitrator, this language is also "categorical, unconditional and unlimited" and thus encompasses any dispute over any of the agreements' terms. *See Paine Webber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996).

Therefore, all disputes concerning the enforceability of the Arbitration Provisions, including any dispute regarding the alleged validity of the agreements, must be decided by the appointed arbitrator.

## POINT III

## DISCOVERY SHOULD BE STAYED PENDING DECISION ON DEFENDANTS' MOTION TO COMPEL ARBITRATION

Given that Plaintiffs signed CSAs and the claims asserted in the Amended Complaint clearly fall within the scope of their Arbitration Provisions, Defendants request that discovery in this case be stayed pending decision on Defendants' Motion to Compel Arbitration.

It is well established that when a dispositive motion would remove the litigation to another forum, good cause may require a stay. *See Transunion Corp. v. PepsiCo, Inc*., 811 F.2d 127, 130 (2d Cir. 1987) (upholding trial court's decision to stay discovery pending decision on forum non conveniens motion, because permitting discovery would defeat the purpose of the motion). Indeed, courts in this Circuit have held that "[a] stay pending a motion to compel arbitration should be granted absent compelling reasons to deny it." *Alvarez v. Experian Info. Sols., Inc*., No. 219CV03343JSJMW, 2021 WL 2349370, at *2 (E.D.N.Y. June 7, 2021); *see also Intertec*

*Contracting Turner Steiner Intern.*, S.A., 98-CV-9116 (CSH) 2001 WL 812224, at *7 (S.D.N.Y. Jul. 18, 2001) (noting general practice of district courts to stay discovery while a motion to compel arbitration is pending).

Here, there are no compelling reasons to deny a stay in this case pending decision on Defendants' anticipated Motion to Compel Arbitration, and in fact, there are compelling reasons to grant a stay. Indeed, given the parties' clear and unmistakable agreement to arbitrate Plaintiffs' claims as well as any issues regarding the enforceability of the Arbitration Provisions, it would be contrary to judicial efficiency to move forward with litigation in this case when Defendants' motion will likely result in this entire case being compelled to arbitration. Accordingly, discovery should be stayed pending Defendants' Motion to Compel Arbitration.

## CONCLUSION

For the reasons stated herein, Defendants respectfully requests that the Court compel the parties to arbitrate this case and a stay of discovery pending Defendants' Motion to Compel Arbitration.

Dated: New York, New York
     April 18, 2024

Respectfully submitted,

**AKERMAN LLP**

By: */s/ Jeffrey A. Kimmel*
    Jeffrey A. Kimmel Esq.
    M. Adil Yaqoob Esq.
    1251 Avenue of the Americas, 37th Floor
    New York, New York 10020
    jeffrey.kimmel@akerman.com
    *Attorney for Defendants*