UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AISHA SCOTT, ARIELLE COSBY, and SALMA TARMIL, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br> v.<br><br>AAM HOLDING CORP., d/b/a FLASHDANCERS GENTLEMENT'S CLUB, 59 MURRAY ST. ENTERPRISES INC., d/b/a FLASHDANCERS GENTLEMEN'S CLUB, BARRY LIPSITZ, BARRY LIPSITZ JR., SHAUN DOE, JIMMY DOE, and ALAINA DOE.<br><br>          Defendants. | Case No.: 1:23-cv-01909(ALC)<br><br><br>**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MOTION TO COMPEL ARBITRATION AND TO STAY THE ACTION** |

# TABLE OF AUTHORITY

**Cases**

42 U.S.C. § 2000e-5(k). ........................................................................................................... 2

7515 of the CPLR (L. 2018, ch 57, § 1 [Part KK, Subpart B]) ....................................................... 4

*Am. Fam. Life Assurance Co. of N.Y. v. Baker*, 778 F. App'x 24, 27 (2d Cir. 2019) ..................... 2

*Brown v. Jacobson*, 1999 U.S. Dist. LEXIS 18921, *6-7 ................................................................. 6

*Catz v. Precision Global Consulting*, No. 19 Civ. 7499, 2021 U.S. Dist. LEXIS 78626, 2021 WL 1600097, at *5 (S.D.N.Y. Apr. 23, 2021) ................................................................. 3

CPLR 7515 ................................................................................................................................. 4

CPLR 7515 [a] [2], [b] ................................................................................................................. 4

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 317 (2d Cir. 2021) ............................. 2

Federal Arbitration Act ............................................................................................................... 5

*Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 409 (S.D.N.Y. 2021) ............................................... 3

*Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 534 N.E.2d 824, 828, 537 N.Y.S.2d 787 (N.Y. 1988) ................................................................................................................................. 2

*Glover v. Bob's Disc. Furniture, LLC*, 621 F. Supp. 3d 442, 449 (S.D.N.Y. 2022) ...................... 2

*Green Tree Fin. Corp.*, 531 U.S. at 90 ......................................................................................... 2

*McDougall v. Samsung Elecs. Am.*, Inc., 2023 U.S. Dist. LEXIS 178169, *14-15 ....................... 3

*McDougall v. Samsung Elecs. Am., Inc.*, 2023 U.S. Dist. LEXIS 178169, *6 .............................. 2

*Monsky v. Moraghan*, 127 F.3d 243, 246 (2d Cir. 1997) ............................................................. 6

*Musnick v. King Motor Co.*, 325 F.3d 1255, 1258-59 (11th Cir. 2003) ....................................... 2

*Newton v LMVH Moët Hennessy Louis Vuitton Inc.*, 2020 N.Y. Misc. LEXIS 3288, ................ 4

*Newton v LMVH Moët Hennessy Louis Vuitton Inc.*, 2020 N.Y. Misc. LEXIS 3288, *12 (2020). 5

*Newton v LMVH Moët Hennessy Louis Vuitton Inc.*, 2020 N.Y. Misc. LEXIS 3288, *8-9 ........... 5

*Phillips v Manhattan & Bronx Surface Transit Operating Auth.*, 132 AD3d 149, 155, 15 N.Y.S.3d 331 [1st Dept 2015] ................................................................................................ 4

*Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) .................................. 2

Reeves v. Safeguard Props. Mgmt., LLC, No. 19 Civ. 10210, 2021 U.S. Dist. LEXIS 110023, 2021 WL 2403538, at *5 (S.D.N.Y. June 10, 2021) ..................................................... 3

*Spinelli v. Nat'l Football League*, 903 F.3d 185, 208 (2d Cir. 2018) ........................................ 2, 3

United States v Morrison (529 US 598, 613, 120 S. Ct. 1740, 146 L. Ed. 2d 658 [2000]) ............. 5

Williamson v. Public Storage, Inc., 2004 U.S. Dist. LEXIS 3799 ................................................ 2

**STATEMENT OF FACTS**

Plaintiffs shall rely on the facts as set forth in their Complaint.

**STANDARD OF REVIEW**

Before compelling arbitration, a court must determine two threshold issues: whether (1) the parties agreed to arbitrate and (2) the scope of that agreement encompasses the claims at issue. *Daly*, 939 F.3d at 421. In evaluating whether the parties have entered into a valid arbitration agreement and their intent, the court must "apply ordinary state-law principles that govern the formation of contracts." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 317 (2d Cir. 2021). *McDougall v. Samsung Elecs. Am., Inc.*, 2023 U.S. Dist. LEXIS 178169, *6

I.   THE ONEROUS TERMS SET FORTH IN THE ARBITRATION LANGUAGE OF THE CONTRACT UNLAWFULLY FEE SHIFTS THE CASE AND CAUSES THOSE OTHERWISE UNABLE TO AFFORD THE COSTS OF ARBITRATION TO BE RESPONSIBLE FOR 50% OF SAID COSTS.

An arbitration agreement may be unenforceable if it appears likely that the party seeking to vindicate legal rights will have to pay prohibitive costs. *See Musnick v. King Motor Co.*, 325 F.3d 1255, 1258-59 (11th Cir. 2003), and cases cited therein; *see also Green Tree Fin. Corp.*, 531 U.S. at 90. Williamson v. Public Storage, Inc., 2004 U.S. Dist. LEXIS 3799, *7

Plaintiff claims that the arbitration agreement does not conform with Title VII because it does not require the arbitrator to award attorney's fees to prevailing employees and would permit

an award of fees to the employer even if the employee's claim had arguable merit. See 42 U.S.C. § 2000e-5(k).

As set forth further in this brief, it is evident and clear that the language of the Agreement, calling for Plaintiffs to pay half the arbitration and be on the hook for legal fee's when the statute they are suing under never contemplated this, is unenforceable.

This is further discussed and argued in Section II.

II.   THERE IS A PROCEDURAL UNCONSCIONABILITY TO THE AGREEMENT.

The terms in the arbitration agreement which require: 1) shared cost of arbitrator, 2) the adjustment of the statute of limitations, 3) the adjustment of fee shifting that is statutorily found in the causes of action, 4) the unequal bargaining power and failure to provide time for employees to obtain counsel, all make the arbitration provision in the Agreement unenforceable.

Under New York law, an arbitration agreement is unconscionable if it is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (quoting *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 534 N.E.2d 824, 828, 537 N.Y.S.2d 787 (N.Y. 1988)); *accord Am. Fam. Life Assurance Co. of N.Y. v. Baker*, 778 F. App'x 24, 27 (2d Cir. 2019) (summary order) (New York law). Generally, there must be a showing that such a contract was "both procedurally and substantively unconscionable when made." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 208 (2d Cir. 2018) (quoting *Gillman*, 534 N.E.2d at 828). "The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract." *Ragone*, 595 F.3d at 121-22; *accord Glover v. Bob's Disc.*

*Furniture, LLC*, 621 F. Supp. 3d 442, 449 (S.D.N.Y. 2022). Procedural and substantive unconscionability operate on a "'sliding scale'; the more questionable the meaningfulness of choice, the less imbalance in a contract's [*15] terms should be tolerated and vice versa." *State v. Wolowitz*, 96 A.D.2d 47, 468 N.Y.S.2d 131, 145 (2d Dep't 1983); *accord Catz v. Precision Global Consulting*, No. 19 Civ. 7499, 2021 U.S. Dist. LEXIS 78626, 2021 WL 1600097, at *5 (S.D.N.Y. Apr. 23, 2021). *McDougall v. Samsung Elecs. Am.*, Inc., 2023 U.S. Dist. LEXIS 178169, *14-15

The arbitration provision is not unenforceable because of unconscionability. "In general, a provision will be deemed unenforceable on unconscionability grounds only where it is both procedurally and substantively unconscionable when made." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 208 (2d Cir. 2018) (New York law). "In other words, a contract or clause is unconscionable when there is an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Id.*

("[T]he FAA certainly does not preclude the enforcement of employment contracts which make employment conditional upon an employee's acceptance of mandatory arbitration."); *accord Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 409 (S.D.N.Y. 2021) ("A 'take it or leave it' contract does not render an arbitration clause unconscionable.").

However, a procedural unconscionability may exist in a contract where a party is "prevented from consulting an attorney before signing it" Reeves v. Safeguard Props. Mgmt., LLC, No. 19 Civ. 10210, 2021 U.S. Dist. LEXIS 110023, 2021 WL 2403538, at *5 (S.D.N.Y. June 10, 2021).

Statutes of limitations are established by state and federal legislatures and set the deadlines for filing lawsuits.  Claims for unpaid wages under the Fair Labor Standards Act, 29 USC § 201,

et. seq. (FLSA) must be asserted within two years of the pay period in which the claim occurred, 29 USC § 255(a).

For individuals employed in New York, Labor Law § 663(e) provides that claims for unpaid wages may be brought within six years of the claim accruing. This offers all workers additional time to assert their claim and allows long-term employees to recover more damages beyond the three years allocated under the FLSA.

The Arbitration Agreement states in pertinent part:

> TO THE EXTENT ALLOWABLE BY APPLICABLE LAW, THE PARTIES TO ARBITRATION SHALL EQUALLY SHARE THE COSTS AND EXPENSES CHARGED BY THE ARBITRATION FORUM OR THE ARBITRATOR. TO THE EXTENT PERMITTED BY APPLICABLE LAW, ANY CLAIM OR CAUSE OF ACTION ARISING OUT OF, RELATED TO, OR IN CONNECTION WITH DANCER'S EMPLOYMENT WITH THE CLUB MUST BE FILED IN ARBITRATION NO MORE THAN ONE (1) YEAR AFTER THE DATE SUCH CLAIM OR CAUSE OF ACTION ACCRUES OR SHALL FOREVER BE WAIVED AND ALL OTHER PROCEEDINGS BARRED.

The Arbitration Agreement appears to desire to circumvent and re-establish Federal Laws and State Laws by redefining the statute of limitations on said claim. This alone should make the arbitration provision on the agreement unenforceable.

Not only does it amend statutory limitations of time, but it seeks to foreclose rights afforded by our legislature. Also, by fundamentally shifting the cost of litigation, it effectively

stands to deny access to the courts for the litigants who can not otherwise afford the costs of arbitration.

II.     THE IS A STATE EMPLOYMENT AND THE PLAINTIFFS REASONABLE EXPECTED TO BE PROTECTED BY THE LAWS OF THAT STATE.

In 2018, our State Legislature enacted section 7515 of the CPLR (L. 2018, ch 57, § 1 [Part KK, Subpart B]), and titled it "Mandatory arbitration clauses; prohibited." Its essential purpose, as clearly manifested by its express definitional and substantive language, is to render "null and void" any contractual provision mandating arbitration of "any allegation or claim of discrimination" (CPLR 7515 [a] [2], [b] [iii]; *see, id., passim*). The arbitration clause underlying the instant motion is precisely such a contractual provision. *Newton v LMVH Moët Hennessy Louis Vuitton Inc.*, 2020 N.Y. Misc. LEXIS 3288, *4 (2020).

Our state has a "a well-defined and dominant public policy" "against sexual harassment in the work place" (*Phillips v Manhattan & Bronx Surface Transit Operating Auth.*, 132 AD3d 149, 155, 15 N.Y.S.3d 331 [1st Dept 2015] [vacating an arbitration award reinstating an employee accused of sexual harassment because the arbitrator interpreted the employee's collective bargaining agreement "in a manner that conflicts with a well-defined and dominant public policy. The public policy against sexual harassment in the workplace"], [*5] *lv denied* 27 N.Y.3d 901, 32 N.Y.S.3d 52, 51 N.E.3d 563 [2016]). It is against this public policy backdrop that our Legislature enacted CPLR 7515 in 2018, eradicating [**4] mandatory arbitration of sexual harassment claims. It did so by prohibiting such arbitration clauses "entered into on or after the effective date" of the statute (*i.e.*, July 11, 2018) (CPLR 7515 [b] [i]), and also, per this court's interpretation

discussed hereinbelow, by declaring then-existing mandatory arbitration clauses, such as the one underlying the instant motion, "null and void" (*id.*, [iii]).

CPLR 7515 was enacted among other provisions of Part KK, Subpart B, of the 2018-19 New York State Budget Bill, sharing a place among various other protections afforded by our Legislature in that bill to victims, and potential victims, of sexual harassment. During state senate floor debates of the bill prior to its enactment, it was hailed as "sweeping legislation that deals with the scourge of sexual harassment" (New York State Senate Record, 241st Leg., Reg. Sess., at 1855 [Mar. 30, 2018]). *Newton v LMVH Moët Hennessy Louis Vuitton Inc.*, 2020 N.Y. Misc. LEXIS 3288, *4-5.

CPLR 7515 prefaces its prohibition of future mandatory discrimination-related arbitration clauses, and its nullification of then-existing discrimination arbitration clauses, with the qualifier, "[e]xcept where inconsistent with federal law" (CPLR 7515 [b] [i], [iii]). Based on that language, defendant asserts that the instant claims must be arbitrated per the language found in [*8] Arbitration Agreement, by force of the Federal Arbitration Act (the "FAA") (9 USC § 1, *et seq.*), which generally requires enforcement of arbitration clauses and, concomitantly, warrants a stay of litigation commenced concerning the arbitrable dispute and an order compelling the parties to proceed to arbitration (*see, id.*, §§ 3, 4). Newton v LMVH Moët Hennessy Louis Vuitton Inc., 2020 N.Y. Misc. LEXIS 3288, *7-8

> A written provision in . . . a contract evidencing *a transaction involving commerce* to settle by arbitration a controversy thereafter *arising out of such contract*, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy *arising out of such a*

> *contract* . . . or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. (9 USC § 2 [emphasis added].)

Because claims for sexual harassment, or other discrimination-based claims, cannot reasonably be characterized as claims concerning or "arising [*9] out of" "a transaction involving commerce," and additionally because the instant case involves purely intrastate activity, the FAA cannot reasonably be said to apply to the Arbitration Agreement's reference to arbitration of sexual harassment or other discrimination-based claims. Nor can the Arbitration Agreement itself be reasonably characterized as "a contract evidencing a transaction involving commerce," particularly insofar as it seeks application to sexual harassment or other discrimination-based claims. Thus, we are left with the express and unambiguous provisions of CPLR 7515, which prohibit and nullify clauses mandating arbitration of such claims. *Newton v LMVH Moët Hennessy Louis Vuitton Inc.*, 2020 N.Y. Misc. LEXIS 3288, *8-9

Indeed, the United States Supreme Court itself, in *United States v Morrison* (529 US 598, 613, 120 S. Ct. 1740, 146 L. Ed. 2d 658 [2000]), noted that "thus far in our Nation's history our cases have upheld Commerce Clause regulation of intrastate activity only where that activity is economic in nature." As noted hereinabove, at the outset, the acts of sexual harassment and related retaliation alleged in the complaint occurred intrastate — in defendant's New York City offices. Nothing relating to that conduct could possibly be cast as "interstate" or "economic in nature." Absent such variables, there can be no possible application of the FAA to the prohibited and nullified arbitration provisions which defendant champions in its motion now before the court.

To suggest that the Legislature toiled to promulgate the general rule of CPLR 7515 only to have it immediately swallowed up by a "federal law" exception, would be to suggest an "objectionable, unreasonable or absurd consequence[]" (*Roberts, supra*, at 81). So, to be clear: it is the opinion of this court (which this court firmly believes is shared by our state Legislature) that a plain and proper reading of the FAA does not support the notion that CPLR 7515 was preempted from the moment of its inception, by the FAA. *Newton v LMVH Moët Hennessy Louis Vuitton Inc.*, 2020 N.Y. Misc. LEXIS 3288, *12 (2020).

III.   THE ARBITRATION LANGUAGE WOULD IN EFFECT DENY PLAINTIFFS ACCESS TO THE COURTS BY FORCING THEM TO PAY HOURLY FOR AN ARBITRATOR THEY CAN NOT AFFORD.

All persons, including prisoners, enjoy a constitutional right of access to the courts. *See Monsky v. Moraghan*, 127 F.3d 243, 246 (2d Cir. 1997), *cert. denied*, 525 U.S. 823, 142 L. Ed. 2d 52, 119 S. Ct. 66 (1998). But that right belongs solely "to litigants or those seeking to be litigants." *See Posr v. Court Officer Shield # 207*, 180 F.3d 409, 413 (2d Cir. 1999). *Brown v. Jacobson*, 1999 U.S. Dist. LEXIS 18921, *6-7

The crafty way in which the arbitration language was drafted would lead to anyone seeking to fight for unpaid wages to be denied access to courts. Our courts have filing fee's which are reasonable, and meant to cover specific costs, not for profit. Judges are paid from federal budgets or state, they are not paid by the litigants.

Access to Courts is a constitutionally afforded right to all parties. When it comes to wage and hour cases, an employer would be able to bankrupt the litigant, not pay them, and then preclude

them from doing anything about it because they are denying them the money in which they need to seek remedy.

The choice to split the fee's for arbitration and make it fee shifting is what should cause the Defendants to lose their right to enforce this arbitration provision.

It is not simply the arbitration language that is of context, it is the entire agreement. But looking at the arbitration language it is clear that it exceeds the scope of constitutional by standing to alter legislative authority.

        Respectfully submitted,

        By: /s/ *Nima Ameri*
        Nima Ameri, Esq.
        AMERI LAW FIRM
        58-60 Main Street, Floor 3
        Hackensack, New Jersey 07601
        Tel: (201)880-8999
        Email: nima.ameri@amerilawfirm.com
        *Attorneys for the Plaintiffs*