UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AISHA SCOTT, ARIELLE COSBY, AND SALMA TARMIL, on behalf of themselves and all others similarly situated,<br><br>         Plaintiffs,<br> -against-<br><br>AAM HOLDING CORP., d/b/a FLASHDANCERS GENTLEMENT'S CLUB, 59 MURRAY ST. ENTERPRISES INC., d/b/a FLASHDANCERS GENTLEMEN'S CLUB, BARRY LIPSITZ, BARRY LIPSITZ JR., SHAUN DOE, JIMMY DOE, and ALAINA DOE.<br><br>         Defendants. | 23-CV-01909 (ALC)<br><br>OPINION & ORDER |

**ANDREW L. CARTER, JR.,** United States District Judge:

  Plaintiffs Aisha Scott, Arielle Cosby, and Salma Tarmil, on behalf of themselves and all others similarly situated filed the instant action against Defendants AAM Holding Corp. ("AAM") d/b/a FlashDancers Gentlemen's Club; 59 Murray St. Enterprises Inc. ("59 Murray") d/b/a FlashDancers Gentlemen's Club; Barry Lipsitz; Barry Lipsitz Jr.; Shaun Doe; Jimmy Doe; and Alaina Doe. Plaintiffs allege several claims in connection with their employment as exotic dancers in Defendants' establishments. Am. Compl., ECF No. 49, ¶¶ 1–9. Pending before the Court is Defendants' motion to compel arbitration. ECF No. 50.

  After reviewing the Parties' submissions and all other relevant materials, the Court **GRANTS** Defendants' motion.

## BACKGROUND

  The Court assumes the Parties' familiarity with the facts and procedural background of this case. Plaintiffs are exotic dancers who worked at adult night clubs owned and operated by Defendants. Am. Compl. ¶ 2. Plaintiffs allege they were not paid any wages during their

1

employment but instead only received gratuities from customers, which in turn were distributed to non-tipped employees. *Id.* ¶ 3. Plaintiffs add that they were required to pay: (1) fees when they arrived late to work; (2) no-show fees when they were unable to work due to health or personal matters; and (3) for the costs of their uniforms. *Id.* ¶ 4–5. Additionally, Plaintiffs allege racial discrimination in their workplace and that Defendants engaged in an organized money laundering scheme. *Id.* ¶ 6–7.

On April 12, 2024, Plaintiffs filed an Amended Complaint alleging employment discrimination and violations of the Fair Labor Standards Act ("FLSA"), the New York State Labor Law ("NYLL"), and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Am. Compl. ¶¶ 1–9. Defendants then filed a motion to compel arbitration on April 18, 2024 (ECF No. 50), Plaintiffs filed their opposition on May 7, 2024 (ECF No. 55), and Defendants replied on May 21, 2024 (ECF No. 58).

## LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of a contract." 9 U.S.C. §2. The FAA establishes "a liberal federal policy favoring arbitration agreements." *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Section 4 of the FAA provides, in relevant part, that "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. The party seeking to compel arbitration bears the initial burden of showing that an arbitration agreement was made. *See, e.g., Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 254 (2d Cir. 2019) (vacating the denial of a motion to compel arbitration for the district court to consider unresolved issues regarding contract formation).

When determining whether the parties have entered a valid agreement to arbitrate, "courts should apply ordinary state-law principles that govern the formation of contracts," and evaluate the allegations "to determine whether they raise a genuine issue of material fact." *Sacchi v. Verizon Online LLC*, No. 14-CV-423, 2015 WL 765940, at *4 (S.D.N.Y. Feb. 23, 2015) (internal citations and quotation marks omitted). If the existence of the arbitration agreement itself is not at issue and the dispute is within the scope of the arbitration agreement, courts must "direct[ ] the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). In deciding whether claims are subject to arbitration, the Court must determine (1) whether the parties entered into a valid agreement to arbitrate and (2) whether the claim falls within the scope of the agreement. *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (citing *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002)).

Parties may agree to have an arbitrator decide "'gateway' questions of 'arbitrability'" and the merits of their contractual disputes. *Rent-A-Ctr. West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). "Such a delegation provision 'is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce' and is 'valid under § 2 [of the FAA] save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 52 (E.D.N.Y. 2017) (citing *Rent-A-Ctr.*, 561 U.S. at 70). However, "'[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'" *Rent-A-Ctr.*, 561 U.S. at 79.

**DISCUSSION**

Plaintiffs do not dispute that they signed a Commissioned Salesperson Agreement ("CSA") that included an Arbitration Provision. *See* Miceli Decl., ECF No. 52-1 ¶ 6. The Arbitration Provision states in part: "Dancer and the Club (the 'Parties') agree that any and all controversies, disputes, or claims – past, present or future – arising out of Dancer's employment at the Club, will be exclusively decided by binding arbitration held pursuant to the Federal Arbitration Act[.] . . . THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CONTROVERSIES, DISPUTES, OR CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY." *Id.*

*Plaintiffs' Unenforceability Claims Are Delegable to the Appointed Arbitrator*

Plaintiffs challenge the validity/enforceability of the Arbitration Provision on the grounds that it unlawfully shifts the fees and costs in this case to Plaintiffs. *See* Pl.'s Opp., ECF No. 55, at 4–5. Plaintiffs argue that an "arbitration agreement may be unenforceable if it appears likely that the party seeking to vindicate legal rights will have to pay prohibitive costs[,]" citing an Eleventh Circuit case, *Musnick v. King Motor Co.*, 325 F.3d 1255, 1258-59 (11th Cir. 2003). *Id.* at 4. But the Supreme Court is clear that "where . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp.–Alabama v. Randolph.*, 531 U.S. 79, 92 (2000).

Here, Plaintiffs submit that they must "pay half the arbitration and be on the hook for legal fee's [sic]" which they argue is unenforceable because "the statute they are suing under never contemplated this[.]" Pl.'s Opp., ECF No. 55, at 5. But Plaintiffs have not met their burden because their conclusions as to costs are conclusory. *See Green Tree*, 531 U.S. at 90 &

4

n.6 (declining to invalidate arbitration agreement where plaintiff asserted that [a]rbitration costs are high and that she did not have the resources to arbitrate" but "failed to support this assertion" beyond a discussion of costs that "relied entirely on unfounded assumptions").  Second Circuit courts have likewise rejected efforts to escape arbitration based on similar "conclusory assertions," *Gill v. World Inspection Network Int'l, Inc.*, No. 06-CV-3187, 2006 WL 2166821, at *6 (E.D.N.Y. July 31, 2006), and "speculat[ion]" regarding arbitral costs, *Senisi v. John Wiley & Sons, Inc.*, No. 13-CV-3314, 2015 WL 256094, at *5 (S.D.N.Y. Jan. 21, 2015).  Plaintiffs' argument here fails.

More broadly, the Court considers enforceability issues to be delegable to the arbitrators.  Courts enforce contractual provisions delegating a determination of any gateway issues to the arbitrator "if there is *clear and unmistakable evidence* from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator."  *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (emphasis in the original, quotation marks omitted).

The Arbitration Provision includes a delegation clause that clearly and unmistakably states that certain gateway issues of arbitrability must be decided by the arbitrator.  *See* Miceli Decl., ECF No. 52-1 ¶ 6. ("[THE] ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY AND ALL DISPUTES OVER THE VALIDITY OF ANY PART OF THIS AGREEMENT, AND ANY AWARD BY THE ARBITRATOR MAY BE ENTERED AS A JUDGMENT IN ANY COURT HAVING JURISDICTION.").  Accordingly, Plaintiffs should submit any disputes about the validity of the Arbitration Provision to the appointed arbitrator.  *See Cohen v. Westlake Flooring Servs. Inc.*, No. 22-CV-7182, 2023 WL 2971772, at *2

(S.D.N.Y. Apr. 17, 2023) (holding that "the delegation of the questions of unconscionability and enforceability of an arbitration agreement to an arbitrator must be upheld").

### *The Arbitration Agreement Is Not Procedurally Unconscionable*

Plaintiffs also contend that the delegation of arbitrability in the Arbitration Agreement is invalid because the agreement is procedurally unconscionable. Although the Court has concluded that the Arbitration Agreement contains a valid delegation provision, it nonetheless considers Plaintiffs' procedurally unconscionability arguments. *See Oganesyan v. Tiffany & Co.*, No. 23-CV-4287, 2023 WL 7928098, at *4 (S.D.N.Y. Nov. 16, 2023) ("Where a court finds clear and unmistakable evidence that contractual parties agreed to arbitrate arbitrability, a party may nonetheless challenge the delegation of arbitrability itself as invalid for unconscionability."). Specifically, Plaintiffs argue generally that the Arbitration Agreement is unconscionable because it: (1) spreads arbitration costs between Plaintiffs and Defendants; (2) modifies the applicable statute of limitations; (3) adjusts the statutory fee-shifting scheme; (4) gives Defendants unequal bargaining power; and (5) fails to provide time for employees to obtain counsel. Pl.'s Opp., ECF No. 55, at 5–8.

"Under New York law, 'a delegation clause is unconscionable only if it is "both procedurally and substantively unconscionable."'" *Billboard Media, LLC v. Wray*, No. 23-CV-7809, 2024 WL 2941270, at *8 (S.D.N.Y. Apr. 25, 2024), *report and recommendation adopted*, No. 23-CV-7809, 2024 WL 4299048 (S.D.N.Y. Sept. 25, 2024) (quoting *Oganesyan*, 2023 WL 7928098, at *4). Procedural unconscionability relates to the actual process of entering into an agreement whereas substantive unconscionability deals with the content of the agreement itself. *See Ragone v. Atl. Video at Manhattan Ctr.,* 595 F.3d 115, 121–22 (2d Cir. 2010).

6

The Court finds that Plaintiffs failed to demonstrate procedural unconscionability in connection with the agreement. Of the issues raised by Plaintiffs, only items (4) and (5) cited above can be construed as procedural. However, Plaintiffs refer to these issues fleetingly and without citing sufficient facts showing the circumstances surrounding the absence of any bargaining at arm's length or that Plaintiffs could not consult counsel before signing the agreement. *See Reeves v. Safeguard Properties Mgmt.*, LLC, No. 19-CV-10210, 2021 WL 2403538, at *5 (S.D.N.Y. June 10, 2021) (finding that the plaintiff did not establish procedural unconscionability when arguing "that he was not given sufficient time to read the Agreement or prevented from consulting an attorney before signing it"). Therefore, Plaintiffs have not established procedural unconscionability, obviating the need for further analysis. Accordingly, Plaintiffs' broader unconscionability claims fail.

### *State Law Does Not Preclude Arbitration of Plaintiffs' Discrimination Claim*

Plaintiffs argue that N.Y. C.P.L.R. § 7515 bars arbitration of their discrimination claim, but Plaintiffs' argument falls short in light of the FAA's applicability to the Arbitration Agreement.[1] New York State law nullifies mandatory arbitration of discrimination claims "[e]xcept where inconsistent with federal law." N.Y. C.P.L.R. § 7515(b)(i), (iii). "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Concepcion*, 563 U.S. at 34; *see also Rollag v. Cowen Inc.*, No. 20-CV-5138, 2021 WL 807210, at *6 (S.D.N.Y. Mar. 3, 2021) ("NY CPLR § 7515 is a paradigmatic example of such a law."); *Whyte v. WeWork Companies, Inc.*, No. 20-

---

[1] Indeed, the Arbitration Provision apprises the Parties to the FAA's applicability in light of the enactment of N.Y. C.P.L.R. § 7515: "Notwithstanding the above, if this agreement is entered into by the parties on or after July 11, 2018, pursuant to CPLR 7515, the parties' agreement to arbitrate all claims does not include claims or causes of action arising from, or related to, any alleged unlawful discriminatory or retaliatory practice of sexual harassment except where inconsistent with federal law, including the FAA."

7

CV-1800, 2020 WL 3099969, at *5 (S.D.N.Y. June 11, 2020) ("The Supreme Court has specifically forbidden state legislatures from creating exceptions to the FAA like the one embodied in CPLR § 7515."). Here, where N.Y. C.P.L.R. § 7515 cannot be invoked to invalidate the Arbitration Agreement, Plaintiffs' discrimination claim is therefore subject to arbitration. *See Gilbert v. Indeed, Inc.*, 513 F.Supp.3d 374, 396 (S.D.N.Y. 2021) (holding that "New York State law cannot exempt Plaintiffs' federal employment discrimination and state law claims from mandatory arbitration under the FAA" and that "Congress did not intend that discrimination claims be exempted from the FAA or its requirement that arbitration agreements requiring private dispute resolution be enforced 'save upon such grounds as exist at law or in equity for the revocation of any contract'") (quoting 9 U.S.C. § 2).

## CONCLUSION

For the reasons set forth by the Court, Defendants' Motion to Compel Arbitration is hereby **GRANTED.** The Clerk of Court is respectfully directed to terminate Defendants' motion at ECF No. 50. This case is stayed pending resolution of the arbitration. The parties shall provide a status report within 30 days of the completion of the arbitration or within six months of the date of this order, whichever is sooner.

**SO ORDERED.**

**Dated: March 19, 2025**
    New York, New York                             **ANDREW L. CARTER, JR.**
                                                   **United States District Judge**